**OPERA PLAZA RESIDENTIAL PAR-CEL HOMEOWNERS ASSOCIA-TION, a California nonprofit corporation, Plaintiff–Appellant,**

v.

**Tuan HOANG; Betty S. Lee–Hoang, Defendants–Appellees.**

No. 02–16682.

United States Court of Appeals, Ninth Circuit.

Submitted June 17, 2004 *.

Filed July 12, 2004.

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

Brandon E. Bickel, Esq., Piedmont, CA, for the plaintiff/appellant.

Before HAWKINS, SILVERMAN, and BYBEE, Circuit Judges.

SILVERMAN, Circuit Judge:

We hold today that § 207 of the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 114 (hereinafter " § 207"), does not confer jurisdiction on the federal courts to hear a routine suit by a condominium homeowners association to enforce its rules against the placement of a satellite television dish in common areas.

## I. Facts

In September 1999, Opera Plaza Homeowners Association and Opera Plaza Master Owners Association (collectively "Opera Plaza") adopted a policy, as part of a "Declaration of Covenants, Conditions and

Restrictions," which prohibited the placement of satellite dishes in common areas of the condominium complex. After adoption of this policy, the Hoangs, who owned one of the condominiums, installed a satellite dish on the exterior of their home in a common area, in violation of the policy. Opera Plaza filed suit in federal court, seeking (1) declaratory relief stating that the Opera Plaza satellite policy is valid, (2) a permanent injunction requiring the Hoangs to remove their satellite dish, and (3) damages from the Hoangs for breach of contract.

The district court dismissed the action for lack of subject matter jurisdiction, noting that only Congress—and not a federal agency—can confer subject matter jurisdiction, and that the Telecommunications Act of 1996 did not authorize the FCC to expand federal subject matter jurisdiction. First, the district court applied the four-factor test from *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and concluded that § 207, and the implementing regulation, 47 C.F.R. § 1.4000(e), did not create a private cause of action. Next the court determined that no substantial federal question was presented by Opera Plaza's suit, as the federal statute and regulation were relevant only as a possible defense by a satellite TV viewer; under the well-pleaded complaint rule, a federal question was not alleged. Finally, the district court observed that state courts adjudicate analogous claims and that review of federal issues in such state actions could be appealed to the Supreme Court.

## II. Jurisdiction and Standard of Review

■ We have jurisdiction pursuant to 28 U.S.C. § 1291. The existence of subject matter jurisdiction is a question of law reviewed de novo. *See Chang v. United States*, 327 F.3d 911, 922 (9th Cir.2003).

## III. Discussion

Section 207, entitled "Restrictions on Over–the–Air Reception Devices," provides that "the [Federal Communications] Commission shall ... promulgate regulations to prohibit restrictions that impair a viewer's ability to receive video programming services through devices designed for over-the-air reception of television broadcast signals, multichannel multipoint distribution services, or direct broadcast satellite services." The accompanying regulation provides that

[p]arties may petition the [FCC] for a declaratory ruling ..., or a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section.

47 C.F.R. § 1.4000(e). Furthermore, 47 C.F.R. § 1.4000(a)(4) provides in relevant part that "[n]o other civil, criminal, administrative, or other legal action of any kind shall be taken to enforce any restriction or regulation prohibited by this section except pursuant to paragraph (d) [which provides for a waiver] or (e) of this section." The House Committee Report on § 207 (then § 308 [1])

directs the [FCC] to promulgate rules prohibiting restrictions which inhibit a viewer's ability to receive video programming from over-the-air broadcast stations or direct broadcast satellite services. The Committee intends this section to preempt enforcement of State or local statutes and regulations, or State or local legal requirements, or restrictive covenants or encumbrances that

---

1. *See* H.R. Conf. Rep. No. 104–458, at 179 (1996) (explaining that § 308 corresponds to § 207).

834

prevent the use of antennae designed for off-the-air reception of television broadcast signals or of satellite receivers designed for receipt of [Direct Broadcast Satellite] services. Existing regulations, including but not limited to, zoning laws, ordinances, restrictive covenants or homeowners' association rules, shall be unenforceable to the extent contrary to this section.

H.R.Rep. No. 104–204(I), at 123–24 (1995), *reprinted in* 1996 U.S.C.C.A.N. 10, 91. Moreover, § 205 of the Telecommunications Act of 1996, Pub.L. No. 104–104, § 205, 110 Stat. 114(hereinafter " § 205"), amends 47 U.S.C. § 303(v) so that it reads, "the [FCC] ... shall ... [h]ave exclusive jurisdiction to regulate the provision of direct-to-home satellite services."

Opera Plaza's argument that the district court erred in dismissing this case for lack of subject matter jurisdiction is three-fold: first, this cause of action "aris[es] under" federal law, *see* 28 U.S.C. § 1331, because it is predicated on § 207 and 47 C.F.R. § 1.4000(e); second, subject matter jurisdiction exists because federal law completely preempts the field; and third, a substantial federal question exists sufficient to confer subject matter jurisdiction.

## A. "Arising Under" Jurisdiction

Opera Plaza argues that the district court erred in dismissing the case for lack of subject matter jurisdiction because its complaint states a cause of action arising under 47 C.F.R. § 1.4000(e). Opera Plaza contends that § 1.4000(e) is the exclusive procedure for testing a restriction such as its satellite policy. Moreover, it argues that while neither §§ 205 nor 207 nor the House Committee Report employs the phrase "cause of action," the direction by Congress to the FCC and Congress's intent to create a private cause of action are clear.

■ "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). However,"the fact that a federal statute has been violated and some person has been harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). While there is some authority suggesting that the four-factor *Cort v. Ash* test is no longer the exclusive means by which to determine when a private cause of action exists, *see Thompson v. Thompson*, 484 U.S. 174, 189, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (Scalia, J., concurring) (noting that the second *Cort* factor, legislative intent, subsumes the others); *Touche Ross*, 442 U.S. at 575, 99 S.Ct. 2479 (noting the first three *Cort* factors all go to legislative intent), courts still apply this test in making this determination, *see, e.g., California v. Sierra Club*, 451 U.S. 287, 292, 101 S.Ct. 1775, 68 L.Ed.2d 101 (1981) (noting that *Cort* outlined a preferred approach for determining whether an implied private right of action existed); *First Pacific Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121–28 (9th Cir. 2000) ("[W]e still find the four-factor test helpful in determining whether a statute provides a private right of action."). The four *Cort* factors are:

First, is the plaintiff one of a class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff?

And finally, is the cause of action one traditionally delegated to state law, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort,* 422 U.S. at 78, 95 S.Ct. 2080 (citations and quotation marks omitted). In the *Cort* analysis, the second factor—whether Congress intended to provide the plaintiff with a private right of action—is the key inquiry in this calculus. *See, e.g., Helfer,* 224 F.3d at 1121. The burden is on the plaintiff seeking to establish that a private right of action exists. *See Suter v. Artist M.,* 503 U.S. 347, 363, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). Importantly, there is support for the proposition—extremely damaging to Opera Plaza's argument—that only federal statutes, and not rules adopted pursuant to that statute, can create a private cause of action, as the district court noted. *See Touche Ross,* 442 U.S. at 577 n. 18, 99 S.Ct. 2479 (Plaintiffs "appear to suggest that the rules adopted under [the federal statute in question] can themselves provide the source of an implied damages remedy even if [the statute] itself cannot. It suffices to say, however, that the language of the statute and not the rules must control.") (citation omitted).

■ As to the first *Cort* factor, which asks whether the plaintiff belongs to the class for whose benefit the statute was enacted, the district court found that the federal scheme is of no "benefit" to Opera Plaza because it has the effect of limiting Opera Plaza's ability to enforce its policy. Thus, the district court reasoned, only a "viewer" (as mentioned in § 207) could assert an action under federal law. Opera Plaza, in turn, points out that § 1.4000(e) mentions "parties," plural, which means that Opera Plaza may bring this suit.

In applying the first *Cort* factor, courts look to whether the plaintiffs that claim a cause of action exists are specifically mentioned as beneficiaries in the statute. *See Cannon v. University of Chicago,* 441 U.S. 677, 690–91, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Touche Ross,* 442 U.S. at 568, 99 S.Ct. 2479 (a private right of action is often found in statutes that "at least prohibited certain conduct or create federal rights in favor of private parties"); *Helfer,* 224 F.3d at 1122–23 ("[W]e have determined that the first factor of the *Cort* test is satisfied when there is an explicit reference to the individuals for whose benefit the statute was enacted."). "The question is not simply who would benefit from the[law], but whether Congress intended to confer federal rights upon those beneficiaries." *Sierra Club,* 451 U.S. at 294, 101 S.Ct. 1775.

Section 207, the only relevant provision that mentions any party specifically, clearly intends to benefit satellite television *viewers;* it provides that "the[Federal Communications] Commission shall ... promulgate regulations to prohibit restrictions that impair a *viewer's* ability to receive video programming services through devices designed for over-the air reception ...." (emphasis added). Section 205, the other statute cited by Opera Plaza, does not on its face create rights in any party's favor. Even § 207 merely tells the FCC to promulgate regulations, and does not speak to whether a federal cause of action is created. For example, it is entirely possible that Congress merely intended that disgruntled viewers could file a complaint with the FCC. The first *Cort* factor thus weighs against finding an implied right of action.

The second and most important *Cort* factor, *see Thompson,* 484 U.S. at 179, 108 S.Ct. 513; *Transamerica Mortgage,* 444 U.S. at 15–16, 100 S.Ct. 242 ("what must ultimately be determined is whether Congress intended to create the private remedy asserted"), examines legislative intent to create a private cause of action. The

836

district court noted that the statutes and their legislative history were silent on whether a private cause of action was created, which it found weighed against finding a private cause of action. Opera Plaza argues that in creating an exclusive remedy in the FCC for enforcement of §§ 205 & 207, Congress clearly intended to create a private cause of action, and the legislative scheme would be useless without such a remedy.

Legislative silence does not necessarily equate to the absence of intent to create a private right of action. *See Transamerica Mortgage*, 444 U.S. at 14, 19, 100 S.Ct. 242 (finding a limited private right of action despite the fact that the law in question "nowhere expressly provide[d] for a private cause of action"); *Helfer*, 224 F.3d at 1124 ("The absence of a statement of intent to create a remedy does not necessarily mean that no remedy is available. Indeed, if that were the case, the Supreme Court would not have developed a test for an implied private right of action."); *but see Touche Ross*, 442 U.S. at 571, 99 S.Ct. 2479 ("[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."). Instead, an examination of the statutory language is determinative of whether a private right of action exists. *See Helfer*, 224 F.3d at 1125 ("[W]e have found in the statutory language . . . evidence in favor of a private remedy."). Moreover, we examine the entire statutory scheme provided by Congress in determining if a private cause of action exists, noting that analogous provisions expressly providing for private causes of action can imply congressional intent not to create an implied cause of action. *See Touche Ross*, 442 U.S. at 571–74, 99 S.Ct. 2479.

[The] focus on congressional intent does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private right of action. The implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors when Congress simply forgot to codify its evidence intention to provide a cause of action. *Thompson*, 484 U.S. at 179, 108 S.Ct. 513. In examining legislative intent to create a private right of action, courts examine the language of the statute, *see Transamerica Mortgage*, 444 U.S. at 16, 100 S.Ct. 242, the context in which the statute was passed, *see Thompson*, 484 U.S. at 181–83, 108 S.Ct. 513, and the statute's legislative history, *see Burgert v. The Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 664–65 (9th Cir.2000).

Sections 205 and 207 are silent as to whether a private cause of action exists, and, as noted above, there are differing views on what this means in a right-of-action determination. In any event, our inquiry does not end simply because a right of action is not expressly provided for. Examining the language of the relevant statutes, section 207 simply empowers the FCC to promulgate regulations; there is nothing in the language that in any way appears to contemplate that parties (or the FCC) will sue under this statute. 47 C.F.R. § 1.4000 evidences an intent to allow a lawsuit—it provides that "[p]arties may petition . . . a court of competent jurisdiction, to determine whether a particular restriction is permissible or prohibited under this section." Not only does this regulation not purport to create jurisdiction in the federal courts—it merely references "a court of competent jurisdiction"—but, even if it did, it is the relevant laws passed by Congress, and not rules or regulations passed by an administrative agency, that determine whether an implied cause of action exists. *See Touche Ross*, 442 U.S. at 577 n. 18, 99 S.Ct. 2479. *Cf.*

*Adams Fruit Co., Inc. v. Barrett,* 494 U.S. 638, 650, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) (Congress's delegation of power to a federal agency "does not empower the [agency] to regulate the scope of judicial power vested by ... statute. Although agency determinations within the scope of delegated authority are entitled to deference, it is fundamental 'that an agency may not bootstrap itself into an area in which it has no jurisdiction.' Accordingly, the [agency's] conclusion that worker's compensation benefits, where available, provide the exclusive remedy of [Agricultural Worker Protection Act] is not entitled to *Chevron* deference") (citations omitted). Section 205, like § 207, has no language that contemplates parties bringing lawsuits. The House Committee Report on § 207 gives no indication that the statute created a federal cause of action.

Examining the statutory context also provides support for the conclusion that no implied right of action exists. Sections 205 and 207 are part of Title II of the Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 114 (1996), which is entitled "Broadcast Services." Title II contains nine sections, dealing with such topics as broadcast spectrum flexibility and terms of broadcast licenses, and generally consists of a set of instructions as to how the FCC is to regulate broadcast services. Notably, no portion of Title II of the Telecommunications Act of 1996 contemplates or in any way addresses litigation, and this suggests that no private cause of action exists under §§ 205 or 207.

We therefore conclude that the second *Cort* factor does not support Opera Plaza's assertion that an implied right of action exists. That the first two *Cort* factors weigh against finding a private right of action is dispositive of our inquiry. *See Sierra Club,* 451 U.S. at 297, 101 S.Ct. 1775; *Oliver v. Sealaska Corp.,* 192 F.3d

1220, 1224 (9th Cir.1999). Thus, we find that no federal private right of action exists to support Opera Plaza's suit.

Opera Plaza argues that it makes no sense to read the "court of competent jurisdiction" language in 47 C.F.R. § 1.4000(e) as indicating only state courts, as the federal scheme intended concurrent state and federal jurisdiction. There is some support for this argument in the Supreme Court's case law. *See Transamerica Mortgage,* 444 U.S. at 19 n. 8, 100 S.Ct. 242 ("One possibility, of course, is that Congress intended that claims under [the statute in question] would be raised only in state court. But we decline to adopt such an anomalous construction without some indication that Congress in fact wished to remit the litigation of a federal right to the state courts."). However, as noted above, a regulation promulgated by an administrative agency such as the FCC cannot by itself, in the absence of congressional authorization, confer subject matter jurisdiction on federal courts. *See Touche Ross,* 442 U.S. at 577 n. 18, 99 S.Ct. 2479. Thus, while the language of § 1.4000 may evidence an intent by the agency to allow suits to proceed in "a court of competent jurisdiction," this is insufficient to create subject matter jurisdiction in the federal courts.

Opera Plaza's attempt to distinguish *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), is unavailing. In *Skelly Oil,* at issue was whether a contract, conditioned on the issuance of a certificate under federal law, was in effect. Plaintiffs claimed that the certificate had issued and the contracts were therefore in force, and sought a declaratory judgment to that effect. The *Skelly Oil* Court noted that the Declaratory Judgment Act was "procedural only," and did not extend federal courts' jurisdiction. 339 U.S. at 671, 70 S.Ct. 876.

Moreover, the Court said, if plaintiffs had sought specific performance under their contract, suit could not be brought in federal court. *Id.* at 672, 70 S.Ct. 876. "Whatever federal claim [plaintiff] may be able to urge would in any event be injected into the case only in anticipation of a defense to be asserted by [defendants]." *Id.* The Court concluded that federal jurisdiction was lacking and accordingly dismissed the action.

*Skelly Oil* is analogous to this case at least as to Opera Plaza's cause of action for declaratory relief. Opera Plaza's declaratory judgment claim seeks a determination that its satellite policy is valid under federal law. Federal law will thus enter the picture only as a possible basis to invalidate the policy—a claim that something is consistent, rather than inconsistent, with federal law raises the specter of a federal question only to rebut a possible defense that it conflicts with a federal statute. *Cf. Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 21, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) ("There are good reasons why the federal court should not entertain suits by the States to declare the validity of their regulations despite possibly conflicting federal law."). It will always be possible to claim that a policy is *consistent* with federal law, but such a claim is not sufficient to confer federal subject matter jurisdiction. Thus, as was the case in *Skelly Oil*, the issue of federal law is only relevant to the Hoangs' possible defense to enforcement of Opera Plaza's policy, to establish that it is invalid and cannot be applied to them (and they are therefore within their rights in placing their satellite dish in a common area of the condominium complex). As a consequence, if anything, *Skelly Oil* is on point at least as to Opera Plaza's declaratory judgment claim and suggests that federal jurisdiction should not be available.

In sum, we find that no private right of action exists under any of the statutes cited by Opera Plaza.

## B. Complete Preemption

The district court rejected Opera Plaza's complete preemption argument, noting that complete preemption was relevant in this case only as a defense that could be asserted by the Hoangs. Opera Plaza counters that the statutory scheme created by §§ 205 & 207 and 47 C.F.R. § 1.4000(a)(4) completely preempts state law and private regulations, such as Opera Plaza's satellite policy. Moreover, Opera Plaza argues, § 205 and the House Committee Report make it clear that Congress intended the FCC to have exclusive jurisdiction over cases such as this. Opera Plaza relies on *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003), to support its complete-preemption argument.

■ Federal question jurisdiction may be properly invoked when the preemptive force of a federal statute is "so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). "Once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* However, "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are preempted ... does not establish" federal jurisdiction. *Id.* at 398, 107 S.Ct. 2425.

■ Opera Plaza's argument that federal law has preempted the field concerning reception of satellite television services is not without some support. Section 205,

for example, provides that "the [FCC] ... shall ... [h]ave *exclusive jurisdiction* to regulate the provision of direct-to-home satellite services." (emphasis added). Moreover, the legislative history of § 207 provides that

> [t]he Committee intends this section *to preempt enforcement* of State or local statutes and regulations, or State or local legal requirements, or restrictive covenants or encumbrances that prevent the use of antennae designed for off-the-air reception of television broadcast signals or of satellite receivers designed for receipt of [Direct Broadcast Satellite] services.

H.R.Rep. No. 104–204(I), at 123–24 (1995) (emphasis added). *See also Kansas ex rel. Stovall v. Home Cable Inc.*, 35 F.Supp.2d 783, 788 (D.Kan.1998) (section "1.4000 is intended to preempt state zoning or land use law or regulations that impair the installation, maintenance or use of an antenna designed to receive direct broadcast satellite service").

■ However, Opera Plaza does not contend that its satellite dish policy is *not* enforceable. Opera Plaza makes just the opposite argument—that its policy *is* in accord with federal law and is therefore enforceable. Thus, this is a case where federal preemption is relevant not to whether Opera Plaza's claims as set forth in the well-pleaded complaint will prevail, but rather only as a possible defense that the Hoangs might raise. Federal jurisdiction is not properly invoked "[o]n the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. 2841.

The only mention of federal law in the complaint is Opera Plaza's claim that its policy is consistent with federal law and its assertion that the Hoangs claim the policy is inconsistent with federal law. Opera Plaza's claim that its policy is consistent with federal law is insufficient to confer jurisdiction. And the claim that the defendants will raise federal law as a defense to a plaintiff's complaint cannot form the basis of federal jurisdiction.

*Beneficial National Bank*, which is a complete preemption case, does not change this result. The Court there noted that federal jurisdiction is proper over a state law claim "in only two circumstances—when Congress expressly so provides ..., or when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat'l Bank*, 539 U.S. at 8, 123 S.Ct. 2058. Neither condition applies to Opera Plaza's claims. There is simply no support for the argument that Congress intended to create federal jurisdiction over a suit by a homeowners association to enforce covenants and restrictions in cases involving television antennas. And state law cases that address claims similar to Opera Plaza's further counsel against a finding of complete preemption in this case. *See, e.g., Belle Terre Lakes Home Owners Ass'n v. McGovern*, 805 S.2d 1286 (La.Ct.App.2002) (affirming trial court's grant of summary judgment for plaintiff homeowners association in suit alleging placement of television satellite violated restrictive covenant); *Holliday v. Crooked Creek Villages Homeowners Assoc., Inc.*, 759 N.E.2d 1088 (Ind. Ct.App.2001) (in suit by neighborhood association against homeowners alleging that placement of satellite dishes for television reception violated covenants, the state appellate court found that sufficient evidence supported trial court's finding that homeowners' multiple satellite dishes, television antennae, and masts were duplicative and not necessary for reception of video programming, such that limitations on them did not violate FCC rules).

## C. Substantial Question of Federal Law

 The district court found that no substantial federal question was present in Opera Plaza's complaint, as, similar to its applicability in the preemption context, the federal scheme was relevant only as a possible defense by the Hoangs. The district court stated that Opera Plaza should simply have sought specific performance of its contract with the Hoangs in state court. Opera Plaza, in turn, argues that substantial questions of federal law are at issue— federal enforcement methods and the uniformity of federal enforcement of telecommunications law.

"The vast majority of cases that come within[federal jurisdiction] are covered by Justice Holmes' statement that a suit arises under the law that creates the cause of action." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (internal quotation marks omitted). However, federal question jurisdiction is also appropriate where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd.,* 463 U.S. at 13, 103 S.Ct. 2841.

Returning to *Skelly Oil,* that case "has come to stand for the proposition that 'if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, [federal] jurisdiction is lacking.'" *Franchise Tax Bd.,* 463 U.S. at 16, 103 S.Ct. 2841 (quoting 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2767, at 744–45 (2d ed.1983)). This disposes of Opera Plaza's first claim for relief, which seeks a declaratory judgment that its satellite policy is valid. It bears emphasis that the only relation to federal law in this first claim is Opera Plaza's assertion that its policy is *consistent* with federal statutes and regulations. As the district court correctly ruled, this is, in essence, a claim that seeks enforcement of a homeowners policy.

The same is true of Opera Plaza's second cause of action seeking a preliminary injunction ordering the Hoangs to remove their satellite dish. Whether or not Opera Plaza is entitled to an injunction depends on whether or not its satellite policy is valid. Federal law will enter the equation only as a possible defense to this claim, when the Hoangs claim that the satellite policy violates federal law. Thus, the second cause of action does not involve a substantial question of federal law sufficient to confer federal jurisdiction.

Opera Plaza's third cause of action, for damages stemming from alleged breach of contract, is clearly a creature of state law. Opera Plaza's third cause of action is entitled "Breach of Governing Documents," and alleges simply that "[a]s a proximate result of defendants' breach of governing documents, plaintiff has been damaged." There is no allegation, and there appears to be none that could be made, that resolution of a substantial question of federal law is necessary to resolve this typical state law breach of contract claim. Thus, this claim is insufficient to confer federal jurisdiction.

In sum, we hold that no sufficient federal question exists as to any of Opera Plaza's three causes of action, and as a result affirm the district court's conclusion that Opera Plaza's complaint did not raise substantial questions of federal law sufficient to confer federal jurisdiction.

## Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.