Michael KOGAN, Derivatively on Behalf of Ligand Pharmaceuticals Incorporated, Plaintiff,

v.

David E. ROBINSON, Paul V. Maier, James L. L'Italien, William A. Pettit, Alexander D. Cross, Irving S. Johnson, Michael A. Rocca, Henry F. Blissenbach, John Groom, John W. Kozarich and Carl C. Peck, Defendants,

and

Ligand Pharmaceuticals Incorporated, a Delaware corporation, Nominal Defendant.

No. 05 CV 1924 DMS(RBB).

United States District Court, S.D. California.

May 24, 2006.

Travis E. Downs, III, Lerach Coughlin Stoia Geller Rudman and Robbins, San Diego, CA, for Plaintiff.

Christopher Harold McGrath, Paul Hastings Janofsky and Walker, San Diego, CA, for Defendants and Nominal Defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

SABRAW, District Judge.

Defendants move to dismiss this action on grounds that Plaintiff may not pursue a private right of action under Section 304 of the Sarbanes–Oxley Act of 2002. Because Section 304 neither expressly nor implicitly confers a private right of action, the Court grants Defendants' motion to dismiss, declines to exercise supplemental jurisdiction over Plaintiff's state law claim, and dismisses the action.

## I.

### BACKGROUND

Plaintiff Michael Kogan ("Plaintiff"), derivatively on behalf of Ligand Pharmaceuticals Incorporated ("Ligand"), filed the present Complaint on October 11, 2005, against Defendants David E. Robinson, Paul V. Maier, James L. L'Italien, William A. Pettit, Alexander D. Cross, Irving S. Johnson, Michael A. Rocca, Henry F. Blissenbach, John Groom, John W. Kozarich, Carl C. Peck, and Nominal Defendant Ligand. Plaintiff is an individual shareholder of Ligand, and the individual Defendants are directors and top officers of Ligand. (Compl. at 3–7.)

Ligand is a Delaware corporation with headquarters in San Diego. (*Id.* at 3.) It develops and markets drugs in the areas of cancer, hormone-related health issues, skin diseases, pain, osteoporosis, and cardiovascular and inflammatory diseases. (*Id.*) Plaintiff alleges that in January 2002, Defendants began falsifying Ligand's publicly reported financial statements in an effort to inflate the price of Ligand stock. Plaintiff alleges Defendants profited from this scheme through the payment of unwarranted salaries, bonuses, fees and stock options, and through their sale of Ligand stock. Plaintiff alleges Defendants' scheme was revealed on May 20, 2005, when Ligand publicly announced it would be restating its earnings for 2002, 2003, and a portion of 2004.

Plaintiff seeks to hold Defendants Robinson and Maier liable under Section 304 of the Sarbanes–Oxley Act, which requires chief executive officers and chief financial officers to reimburse their company for specified bonuses and profits realized in the event of an accounting restatement

caused by misconduct. Plaintiff's first claim for relief is based upon Section 304, and seeks disgorgement of profits and bonuses received by Defendants Robinson and Maier. Plaintiff's second claim for relief alleges a state law claim for breach of fiduciary duty against all individual Defendants.

Defendants filed their motion to dismiss on January 9, 2006. Thereafter, Plaintiff filed his opposition brief and Defendants filed their reply. The motion came on for hearing on March 10, 2006. Travis E. Downs, III and Randall Baron appeared on behalf of Plaintiff, and William F. Sullivan and Christopher McGrath appeared on behalf of Defendants. At the conclusion of the hearing, the Court ordered supplemental briefing which was received by March 20, 2006. For the reasons set forth below, the Court grants Defendants' motion.

## II.

## DISCUSSION

Congress passed the Sarbanes–Oxley Act in response to the demise of Enron Corporation and the collapse of World-Com. One commentator has described the Act as "a securities regulation smorgasbord." HAROLD S. BLOOMENTHAL, SARBANES-OXLEY ACT IN PERSPECTIVE § 1:10 (2006). Among its other offerings, "[t]he Act includes a new certification regime that attempts to enhance the reliability and quality of financial and other information included in reports filed with the SEC and otherwise made available in the market." *Id.*

Section 304 of the Act, provides:

(a) Additional compensation prior to noncompliance with commission financial reporting requirements. If an issuer is required to prepare an accounting restatement due to the material noncompliance of the issuer, as a result of misconduct, with any financial reporting requirement under the securities laws, the chief executive officer and chief financial officer of the issuer shall reimburse the issuer for-

(1) any bonus or other incentive-based or equity-based compensation received by that person from the issuer during the 12–month period following the first public issuance or filing with the Commission (whichever first occurs) of the financial document embodying such financial reporting requirement; and

(2) any profits realized from the sale of securities of the issuer during that 12–month period.

(b) Commission exemption authority. The Commission may exempt any person from the application of subsection (a) of this section, as it deems necessary and appropriate.

15 U.S.C. § 7243.

Plaintiff initially argues Section 304 expressly creates a private right of action in favor of issuers to seek reimbursement from top officers of certain bonuses and profits. In the alternative, Plaintiff asserts Section 304 implicitly provides a private right of action. These arguments are addressed in turn, keeping in mind the burden is on Plaintiff to "establish that a private right of action exists." *Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang,* 376 F.3d 831, 835 (9th Cir.2004) (citation omitted).

### A. Does Section 304 Explicitly Provide a Private Remedy?

Plaintiff argues the "clear and unambiguous language" of Section 304 grants an "explicit private remedy" in favor of the issuer or those acting on behalf of the issuer in a derivative action. (Opp'n to Mot. to Dismiss at 5.) According to Plaintiff, because Section 304 mandates that the "chief executive officer and chief financial officer of the issuer *shall reimburse* the

issuer," it expressly confers a private right to sue in favor of the issuer. (*Id.* at 5–6) (emphasis added).

Despite Plaintiff's protestations to the contrary, Congress did not explicitly authorize a private right of action by such terms. The language—"shall reimburse the issuer"—simply does not address the matter of enforcement. Accordingly, this Court joins all other courts that have considered this issue, and concludes Section 304 does not explicitly create a private remedy. *See In re Whitehall Jewellers, Inc. S'holder Derivative Litig.*, No. 05 C 1050, 2006 WL 468012, at *7 (N.D.Ill. Feb.27, 2006); *In re BISYS Group Inc. Derivative Action*, 396 F.Supp.2d 463, 464 (S.D.N.Y.2005) ("The Act does not expressly create a private cause of action in favor of the issuer or, for that matter, anyone else."); *Neer v. Pelino*, 389 F.Supp.2d 648, 652 (E.D.Pa.2005) ("Section 304 does not explicitly afford a private right of action[.]")

## B. Does Section 304 Imply a Private Remedy?

 Whether Congress intended to grant a private right of action in Section 304 is answered by the text and structure of the statute. In *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), the Supreme Court instructed that, "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Id.* at

286, 121 S.Ct. 1511 (citation omitted). Therefore, the "judicial task is to *interpret the statute* Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979)) (emphasis added). "Statutory intent on this latter point is determinative." *Id.* (citations omitted). "Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87, 121 S.Ct. 1511 (citations omitted) (emphasis added). The Supreme Court further cautioned that, " 'Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.' " *Id.* at 287, 121 S.Ct. 1511 (citation omitted).

"We therefore begin (and find that we can end) our search for Congress's intent with the text and structure" of the statute. *Id.* at 288, 121 S.Ct. 1511. Pursuant to *Sandoval*, this Court finds it can discern Congress's intent from the text and structure of Section 304.[1]

### 1. The Text of Section 304

As discussed, Section 304(a) provides that CEOs and CFOs "shall reimburse the issuer" certain bonuses and profits when

---

1. Plaintiff relies on *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to argue a private remedy is implicit in Section 304. *Cort* sets forth a four-factor test: "First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally,

is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?" *Id.* at 78, 95 S.Ct. 2080 (citations omitted). This Court, however, need not "trudge through" the *Cort* factors when the dispositive question of Congress's intent is resolved by the statute itself. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 388, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Sandoval*, 532 U.S. at 275, 121 S.Ct. 1511.

an accounting restatement is required due to noncompliance with financial reporting requirements of the securities law, where the noncompliance is caused by misconduct. 15 U.S.C. § 7243(a). Plaintiff initially argues the mandatory language of Section 304—that executives "*shall* reimburse the issuer"—demonstrates Congress's intent to create a private right of action in favor of issuers. Plaintiff asserts that because Section 304 itself mandates reimbursement to issuers, the statute implicitly provides a remedy of disgorgement in their favor. (*See* Opp'n to Mot. to Dismiss at 7–8; Pl.'s Supp. Br. at 1.) This argument, however, blurs the distinction between rights and remedies conferred by statute.

While Section 304 creates a *right* in favor of issuers for reimbursement of certain bonuses and profits, *Neer*, 389 F.Supp.2d at 653, "whether Congress intended additionally that [this] provision[] would be enforced through *private* litigation is a different question." *Id.* at 653–54 (citing *Transamerica*, 444 U.S. at 18, 100 S.Ct. 242) (emphasis added). Section 304's rights-creating language does not, standing alone, imply a private remedy. Whether Section 304 "displays an intent to create not just a private right but also a private remedy," *Sandoval*, 532 U.S. at 286, 121 S.Ct. 1511, is a different question that demands more from the text of the statute before such Congressional intent can be deciphered.

Plaintiff's next textual argument focuses on subsection (b) of Section 304, which provides that the "Commission may exempt" a CEO or CFO from reimbursing the issuer "as it deems necessary and appropriate." 15 U.S.C. § 7243(b). According to Plaintiff, "[w]ere the SEC alone empowered to enforce § 304, there would be no need for Congress to create an exemption." (Opp'n to Mot. to Dismiss at 6.) An interpretation that the SEC is the sole enforcer of the statute would render the exemption provision "surplusage," as the SEC's discretion to exempt would be inherent in its prosecutorial duties and need not be expressly stated. (Pl.'s Supp. Br. at 1 n. 1.) *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (statutory construction that renders clause, sentence or word superfluous ought to be avoided). Thus, the statute's exemption provision—in order not to be superfluous—must be interpreted as applying to *private* litigation. (Opp'n to Mot. to Dismiss at 6.) That is, the SEC may exercise its powers of exemption and exempt CEOs and CFOs from Section 304 enforcement after private litigation has commenced. (*See id.*)

Plaintiff's argument "assumes that after a private party brings suit, the SEC would make an exemption assessment." *Neer*, 389 F.Supp.2d at 654. But the grant of such exemption powers to the executive branch over pending litigation in which the SEC theoretically would not even be a party, would raise serious constitutional questions. How would the SEC exempt alleged wrongdoers in pending litigation in which it is not a party without encroaching on the judiciary? As stated in *Neer*, "Congress provided no guidance for private parties or the SEC as to what form SEC exemption determinations would take, or even whether such determinations would be mandatory." *Id.* Because Plaintiff's interpretation of the exemption provision would raise serious constitutional questions, the Court declines to adopt it. *See Clark v. Martinez*, 543 U.S. 371, 380–81, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (interpretation of statute that avoids constitutional problems should prevail over interpretation that raises constitutional problems). Thus, the exemption provision does not manifest an intent to create a private remedy.

Plaintiff next argues that the text of Section 304, coupled with the reasoning in two Ninth Circuit cases, counsels in favor of implying a private remedy. Plaintiff first cites to *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir.1995). There, the court implied a private remedy in a statute that mandated bidders "shall pay the increased consideration" to a shareholder who was paid less than another shareholder.[2] Plaintiff seizes on *Epstein* because the "shall pay" language is similar to Section 304's "shall reimburse" language.

While the "shall pay" language provided a "right" in favor of plaintiffs in *Epstein* and was a significant factor toward implying a private remedy, it was not the sole basis for the court's decision. 50 F.3d at 651. *See also Sandoval*, 532 U.S. at 286, 121 S.Ct. 1511 (judicial task is to determine whether statute creates not just a private right but also a private remedy). In addition to the rights-creating language of the statute, the *Epstein* court noted that if shareholders were not permitted to sue "there would be no way" to enforce the "shall pay" command of the statute. 50 F.3d at 651. The absence of an enforcement provision was an additional factor "point[ing] to Congress' intent to give shareholders the right to sue." *Id.* Section 304, however, does not suffer from such an omission. In enacting the Sarbanes–Oxley Act, Congress addressed the issue of enforcement and provided the Securities and Exchange Commission with power to enforce all provisions of the Act. *See* 15 U.S.C. § 7202(b)(1). Plaintiff concedes this fact. (*See* Opp'n to Mot. to Dismiss at 9.) Accordingly, even in the absence of a private remedy, Section 304 is enforceable by the SEC.

The court in *Epstein* also relied on "contemporary legal context" as a basis for inferring Congressional intent. 50 F.3d at 650–51. It noted that in 1968 when the statute was enacted, the Supreme Court's "implied right of action jurisprudence gave Congress reason to think it need not decide the private right of action question itself," as the Supreme Court had earlier "announced a liberal policy toward inferring private rights of action for securities law violations generally." *Id.* at 651 (citing *J.I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964)). But the policy toward liberally inferring private remedies in *Borak* was "abandoned" in 1975, well before the enactment of Section 304, when the Supreme Court decided *Cort*, 422 U.S. at 66, 95 S.Ct. 2080. *See Sandoval*, 532 U.S. at 287, 121 S.Ct. 1511.[3] The *Epstein* court's analysis, therefore, sheds no light on whether Section 304 implies a private right of action.

---

**2.** The statute in *Epstein* states, "Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holder of such securities, such person *shall pay* the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer or request or invitation for tenders whether or not such securities have been taken up by such person before the variation of the tender offer or request or invitation." 15 U.S.C. § 78n(d)(7) (emphasis added).

**3.** The implied private right of action jurisprudence is described as having evolved from liberally inferring private remedies, *Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423, to "establishing a presumption against implying private rights of action," *Cort*, 422 U.S. at 78, 95 S.Ct. 2080, to a "clear statement rule" which focuses on the text and structure of the statute under consideration. *See Leading Cases*, 115 Harv.L.R. 306, 506 (2001–02) ("Indeed, whereas ... *Cort* could be characterized as establishing a presumption against implying private rights of action, the standard applied by the *Sandoval* Court [532 U.S. at 275, 121 S.Ct. at 1513] is more akin to a clear statement rule, which demands explicit authorization in the statutory text for a right of action.")

Plaintiff next cites *First Pacific Bancorp, Inc. v. Helfer*, 224 F.3d 1117 (9th Cir.2000), for the proposition that where equitable remedies are created in favor of an intended beneficiary, there is a "presumption" in favor of finding an implied private right of action. (Pl.'s Supp. Br. at 1.) Plaintiff argues Section 304 confers an equitable remedy of disgorgement, therefore the Court should presume a private right of enforcement.

In *First Pacific Bancorp*, however, while the Ninth Circuit did state that it is "more inclined" to presume a private remedy where "the remedy at hand is an equitable one [*i.e.*, an accounting]," it noted that such a presumption is premised upon "Congress' silence" regarding enforcement of the statute. 224 F.3d at 1125. The statute, like the statute in *Epstein*, provided "no alternative remedy or means to enforce [it]." 224 F.3d at 1126. The court found that to be a "perplexing problem" (*Id.* at 1121), and addressed it accordingly: "[W]here no enforcement mechanism is explicitly provided by Congress . . . , it is appropriate to infer that Congress did not intend to enact unenforceable requirements. Thus, it is fair to imply a private right of action from the statute at issue." *Id.* at 1126. As noted, however, Section 304 is enforceable by the SEC. *See* 15 U.S.C. § 7202(b)(1). The decision in *First Pacific Bancorp*, therefore, does not assist Plaintiff.

### 2. The Structure of Section 304 and the Sarbanes–Oxley Act

Plaintiff references Section 303 in support of his position that Congress intended to grant a private right of action in Section 304. Section 303 proscribes manipulation of independent auditors by officers and directors for the purpose of rendering financial statements materially misleading. 15 U.S.C. § 7242(a). It provides that "the Commission shall have exclusive authority to enforce this section." *Id.*, sub.(b).

Plaintiff argues "the fact that § 303 specifically limits enforcement solely to the SEC undermines any contention that § 304 is similarly dedicated [*i.e.*, to SEC enforcement only]—because no language in that section explicitly limits enforcement to the SEC." (Opp'n to Mot. to Dismiss at 9.) Because Section 303 may be enforced only by the SEC and Section 304 does not contain such a limitation, Plaintiff argues Congress intended Section 304 to be "co-enforced" by the SEC and issuers. (*See id.*)

However, Congress's silence regarding exclusive enforcement, simply does not speak to the separate issue of whether Congress intended to affirmatively create a private remedy in Section 304. On that issue, the Court finds Section 306 to be helpful. Section 306 makes it unlawful for directors or executive officers to buy or sell any of the issuer's equity securities during a pension fund blackout period if such securities were acquired in connection with the director or executive officer's employment. Unlike Section 304, Section 306 expressly creates a private remedy to enforce its terms:

> *[A]n action to recover profits* in accordance with this subsection *may be instituted* at law or in equity *in any court of competent jurisdiction by the issuer*, or by the owner of any security of the issuer in the name and on behalf of the issuer if the issuer fails or refuses to bring such action . . . .

15 U.S.C. § 7244(a)(2)(B) (emphasis added).

Section 306 demonstrates that when Congress intended to create a private remedy, it did so explicitly and in unmistakable terms. "[W]hen Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82

(1979) (declining to infer private remedy when provision silent on the matter is flanked by provisions explicitly granting private rights of action). As stated in *Neer*, "Because Congress explicitly created a private right of action in Section 306 and did not do so in Section 304, the natural inference is that Congress did not intend to create a private right of action in Section 304." 389 F.Supp.2d at 655. This Court agrees.

While Section 304 creates a right in favor of issuers, it does not create a private remedy. A Congressional intent to grant such a remedy is not evident in the text and structure of the statute, particularly where Congress has explicitly created a private remedy in a neighboring provision but did not do so in Section 304. In the absence of statutory intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87, 121 S.Ct. 1511. In light of the text and structure of Section 304 and the Sarbanes–Oxley Act, this Court declines to imply a private right of action. Absent a private right of action, this case fails to raise a federal question, and absent a federal question, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim.

### III.

### CONCLUSION

For these reasons, the Court **GRANTS** Defendants' motion to dismiss.

**IT IS SO ORDERED.**