**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORTH COUNTY COMMUNICATIONS
CORP.,
                    *Plaintiff-Appellant,*

            v.

CALIFORNIA CATALOG &
TECHNOLOGY, d/b/a CTT
Telecomms (OCN 573B),
                              *Defendant,*

TGEC COMMUNICATIONS CO. LLC,
CA (OCN 5969); UNITED STATES
CELLULAR CORP-CALIFORNIA, (OCN
6261); GTE MOBILNET OF TAMPA,
INC., (OCN 6339); ARCH WIRELESS
HOLDINGS, INC., (OCN 6630); EL
DORADO CELLULAR, d/b/a Mountain
Cellular (OCN 6980); BROOKS
FIBER PROPERTIES, INC., (OCN
7219); THE OTHER PHONE
COMPANY, INC., (OCN 7452);
CHARTER FIBERLINK CA-CCO LC,
(OCN 776C); FIRSTWORLD SO. CA,
(OCN 7839); A+ WIRELESS INC.,
d/b/a Advantage Wireless-CA
(OCN 822A); MPOWER
COMMUNICATIONS CORP-CA, (OCN
8322); CHOICE TELECOMM, LLC-CA
(OCN 885B); TRANS NATIONAL
COMMUNICATIONS INTL, INC.-CA

No. 08-55048

D.C. No.
CV-06-01542-LAB

OPINION

(OCN 864C); COMMPARTNERS, LLC-CA (OCN 869C); ALLEGIANCE TELECOM, INC.-CA (OCN 8782; ONESTAR COMMUNICATIONS, LLC-MD (OCN 9992); INTEGRATED COMMUNICATIONS CONSULTANTS, INC.-CA (OCN 9397); NTCH-CALIFORNIA, INC. (OCN 9607); TELEMEX INTERNATIONAL-CA (OCN 998B); BAY AREA CELLULAR TELEPHONE; PACIFIC CENTREX SERVICES, INC.-CA (OCN 3662); BULLSEYE TELECOM, INC.-CA (OCN 069A); COMM SOUTH COMPANIES, INC.-CA (OCN 4 00A); ARRIVAL COMMUNICATIONS, INC.-CA (4553); BLUE CASA COMMUNICATIONS LLC-CA (OCN 111B); COMCAST PHONE OF CALIFORNIA LLC-CA (OCN 7610); COMMUNICATIONS EXPRESS INC., d/b/a Com Express; ECI COMMS INC., d/b/a ITS Network Services-CA (OCN 3630); ERNEST COMMUNICATIONS, INC.-CA (OCN 4961); EXCEL TELECOMMUNICATIONS, INC.-CA (OCN 243A); EXPRESS TELEPHONE SERVICES, INC.-CA (OCN 093A); GLOBAL NAPS CALIFORNIA, INC.-CA (OCN 5300); IN TOUCH COMMUNICATIONS, INC.-CA (OCN 047B);

LIGHTYEAR NETWORK SOLUTIONS, LLC-CA (OCN 5370); MCGRAW COMMUNICATIONS, INC. (OCN 5597); METROPOLITAN TELECOMMS CALIFORNIA, D/B/A Mettel-CA (OCN 180A); PNG TELECOMMS d/b/a Powernet Global Comms CA (OCN 240B); POINTE COMMUNICATIONS CORP-CA (OCN 2595); PREFERRED CARRIER SERVICES, INC., d/b/a Phones For All (OCN 5428); TELEPHONE SERVICE INCORPORATED, d/b/a FRIENDLYLEC CA (OCN 2015); VCOM SOLUTIONS, INC.-CA (OCN 334B); WHOLESALE AIR-TIME, INC.-CA (OCN 199B); LEAP WIRELESS INTL, INC. d/b/a Cricket Comm, Inc. (OCN 0822); BLUE LICENSES HOLDING LLC, (OCN 6010); PACIFIC BELL MOBILE SERVICES, (OCN 6672),

*Defendants,*

and

CELLCO PARTNERSHIP, d/b/a Verizon Wireless-CA (OCN 6006); CELLCO PARTNERSHIP, d/b/a Verizon Wireless-NM (OCN 6573); T-MOBILE USA, INC., (OCN 6529); CAL-ONE CELLULAR LP, (OCN 6604); PHONECO, L.P.-CA, (OCN 542B); CINGULAR WIRELESS; CRICKET COMMUNICATIONS, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
April 17, 2009—Pasadena, California

Filed February 10, 2010

Before: Johnnie B. Rawlinson and N. Randy Smith,
Circuit Judges, and Claudia Wilken,* District Judge.

Opinion by Judge Rawlinson

*The Honorable Claudia Wilken, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Appellant North County Communications is represented by Joseph G. Dicks (argued) and Christopher J. Reichman, Dicks & Workman, San Diego, California.

Appellee Cal-One Cellular L.P. and Cellco Partnership are represented by John Hueston and Laura W. Brill (argued), Irell & Manella, Los Angeles, California.

Appellees T-Mobile USA, Cingular Wireless, and Cricket Communications, Inc. are represented by Martin L. Fineman, Suzanne K. Toller, and Gregory J. Kopta (argued), Davis Wright Tremaine LLP, San Francisco, California.

Appellee PhoneCo, L.P. is represented by Alan E. Greenberg and Kelly A. Van Nort, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, San Diego, California.

## OPINION

RAWLINSON, Circuit Judge:

The dispute in this telecommunications case stems from Appellant North County Communication's (North County) contention that it has a private right of action to enforce various compensation arrangements pursuant to the Federal Communications Act. In its complaint, North County, a

competitive local exchange carrier (CLEC), alleged that Appellees, as commercial mobile radio service (CMRS) providers, failed to properly compensate North County for terminating their calls on North County's network.

North County challenges the district court's dismissal of its declaratory judgment claims for lack of subject matter jurisdiction. Specifically, the district court held that North County had no private right of action to enforce the compensation arrangements in federal court. On appeal, North County asserts that 47 U.S.C. §§ 251(b)(5), 201(b), 206 and 207, and the implementing Federal Communications Commission (Commission or FCC) regulation, 47 C.F.R. § 20.11, provide the requisite private right of action. We disagree, and affirm the district court's judgment.

## I.  BACKGROUND

### A.  Statutory and Regulatory Background

Prior to enactment of the 1996 Telecommunications Act, the Commission established rules governing connections between Local Exchange Carriers (LECs) and CMRS providers. These rules required "mutual compensation for the exchange of traffic between LECs and CMRS providers." *In The Matter of Developing a Unified Intercarrier Compensation Regime* (*T-Mobile Decision*), 20 F.C.C.R. 4855, 4856, ¶ 2 (2005) (footnote reference omitted). "In particular, the rules required the originating carrier, whether LEC or CMRS provider, to pay reasonable compensation to the terminating carrier in connection with traffic that terminates on the latter's network facilities." *Id.* at 4856, ¶ 2 (footnote reference omitted).

The Commission eventually determined that 47 U.S.C. § 251(b)(5) "obligates LECs to establish reciprocal compensation arrangements for the exchange of intraMTA [Major Trading Area] traffic between LECs and CMRS providers."

*Id.* at 4856, ¶ 3 (footnote reference omitted). For traffic originating and terminating within the same MTA, reciprocal compensation obligations under § 251(b)(5), rather than interstate or intrastate access charges, applied. *See id.* at 4856-57, ¶ 3 (footnote references omitted).

"Although section 251(b)(5) and the Commission's reciprocal compensation rules reference an arrangement between LECs and other telecommunications carriers, including CMRS providers, they do not explicitly address the type of arrangement necessary to trigger the payment of reciprocal compensation or the applicable compensation regime, if any, when carriers exchange traffic without making prior arrangements with each other." *Id.* at 4857, ¶ 4 (footnote reference and internal quotation marks omitted). This lack of guidance generated a legion of disputes among the carriers, *see id.* at 4858, ¶ 6, and prompted clarification from the Commission.

As the existing rules did not expressly preclude the filing of tariffs to set compensation, the Commission clarified that the reciprocal compensation rules did not, at that time, prohibit incumbent LECs from filing state termination tariffs, which CMRS providers were obligated to accept. *See id.* at 4860, ¶ 9. "Because the existing compensation rules [were] silent as to the type of arrangement necessary to trigger payment obligations, [the Commission found] that it would not have been unlawful for incumbent LECs to assess transport and termination charges based upon a state tariff." *Id.* at 4860, ¶ 10 (footnote reference omitted). However, the Commission also "amend[ed] [its] rules to make clear [its] preference for contractual arrangements by prohibiting LECs from imposing compensation obligations for non-access CMRS traffic pursuant to tariff." *Id.* at ¶ 9 (footnote reference omitted).[1]

---

[1] "[T]he term 'non-access traffic' refers to traffic not subject to the interstate or intrastate access charge regimes, including traffic subject to section 251(b)(5) of the Act [reciprocal compensation arrangements] and ISP-bound traffic." *T-Mobile Decision*, 20 F.C.C.R. at n.6 (internal quotation marks omitted).

Upon the effective date of the Commission's amendments, any "existing wireless termination tariffs [would] no longer apply." *Id.* at 4863, ¶ 14.

### B.   The District Court's Dismissal of North County's Third Amended Complaint

According to its third amended complaint, North County "is a CLEC that provides switched and non-switched local exchange, exchange access, and other telecommunication services to end users in California." North County alleged that the defendant-appellees "are CMRS and CLEC providers that offer calling plans allowing calls to areas serviced by [North County]."

North County asserts that it "incurs costs in terminating calls sent to [its] end users by the Defendants' end users." North County alleged that defendant-appellees "knowingly send traffic to [North County] in the absence of an interconnection agreement or a reciprocal compensation agreement[2] for [North County] to terminate to its end users customers. As a common carrier, [North County] is obligated to terminate calls received from other carriers to [North County's] end users."

North County alleged that it "began sending monthly bills to the Defendants for traffic termination in January, 2003," and that it "billed the Defendants $ 0.004 per minute and $0.007 per call set-up, before increasing its rate to the prevailing market rate of $0.011 per minute." According to North County, the defendants refused to pay the bills or enter into a compensation arrangement.

---

[2]North County defined reciprocal compensation as "the payment arrangement that recovers the costs incurred for the transport and termination of local telecommunication traffic originating on one party's network and terminating on the other party's network."

Relying on the *T-Mobile Decision*, North County contended that "it is proper for a LEC, like [North County], to be compensated for traffic sent to its end-users that originates with CMRS providers pursuant to its tariff on file." *North County acknowledged that the Commission "limited the scope of this finding to time periods preceding April 29, 2005, the effective date of the amendments to 47 C.F.R. section 20.11 promulgated by the T-Mobile Decision*." According to North County, "CMRS providers still remained obligated to comply with the principles of mutual compensation and to pay reasonable compensation to the LEC for the termination of traffic that originates with the CMRS provider."

In its first cause of action, North County sought declaratory judgment, alleging that "it is entitled to be compensated for the termination of traffic which the Defendants sent and continue to send to [North County's] end users . . ." North County recognized that "while determining the precise rate of compensation for termination of traffic, including call set-up and minutes of use, under these circumstances may be a matter beyond the expertise of this court and within the expertise of the appropriate regulatory body, the FCC has also indicated that 'collection actions' do not state a cause of action under its rules." North County requested that the district court determine:

> (1) the number of calls and the number of minutes originating on the Defendants' networks and terminated on [North County's] network from April 29, 2005 up through the time of trial, (2) that [North County] is entitled to receive mutual compensation for the termination of calls to [North County's] end-users which originate on the Defendants' networks, and (3) that the Defendants are required to commit to compensate [North County] at a rate to be determined by the appropriate regulatory body, or else refrain from sending any traffic to [North County's] end-users and refrain from taxing [North County's]

limited resources, (4) that the Defendants' conduct amounts to an unjust and unreasonable practice in violation of section 201 and 202 of the Federal Communications Act (47 U.S.C. §§ 201, 202) which has damaged [North County] (47 U.S.C. §§ 206, 207).

North County's second cause of action is premised on quantum meruit. North County alleged that "Defendants knowingly accepted, used, enjoyed and benefitted from the services provided by [North County]." According to North County, "[i]t would be unjust to allow the Defendants to have the benefit of [North County's] services without paying reasonable compensation for these benefits and the Defendants should be so ordered to pay." North County sought damages "covering the period beginning April 29, 2005 and continuing up through the time of trial."

In its third cause of action, North County asserted damages pursuant to the applicable tariff "covering the period beginning 3 years before the filing of this complaint and continuing up to and including April 28, 2005."

The district court granted defendant-appellees' motion to dismiss, holding that it lacked subject matter jurisdiction, because North County failed to properly allege a federal claim. The district court also concluded that declaratory judgment "would not achieve the objectives of granting such relief." North County filed a timely notice of appeal.

## II. STANDARDS OF REVIEW

"We review *de novo* dismissals under Rules 12(b)(1) and 12(b)(6)." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1156 (9th Cir. 2007) (citing *Holcombe v. Hosner*, 477 F.3d 1094, 1097 (9th Cir. 2007)). "For the purposes of reviewing such dismissals, and where, as here, no evidentiary hearing has been held, all facts alleged in the complaint are presumed to be true." *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277,

289-90 (1995)) (alterations and internal quotation marks omitted).

"District court decisions about the propriety of hearing declaratory relief actions are reviewed for abuse of discretion." *Id.* (quoting *Wilton*, 515 U.S. at 289-90) (alterations and internal quotation marks omitted).

"Although we review the ultimate decision to decline to exercise jurisdiction for abuse of discretion, we conduct *de novo* review of the court's application of the primary jurisdiction doctrine[.]" *Id.* at 1162 n.11 (citations omitted).

## III.   DISCUSSION

### A.   North County's Declaratory Judgment Act Claims

**[1]** North County's claims are hampered by the very relief it seeks — a declaratory judgment. "[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction[.]" *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005). "As required by Article III, courts may adjudicate only actual cases or controversies." *Rhoades*, 504 F.3d at 1157 (citation omitted). "The disagreement underlying the declaratory relief action must not be nebulous or contingent but must have taken on a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Id.* (quoting *Pub. Serv. Comm'n v. Wycott Co. Inc.*, 344 U.S. 237, 244 (1952)) (alteration omitted).

**[2]** North County contends that the district court has subject matter jurisdiction under the Declaratory Judgment Act because the Federal Communications Act creates a private right of action for violations of its compensation requirements. "Where a federal statute does not explicitly create a private right of action, a plaintiff can maintain a suit only if

Congress intended to provide the plaintiff with an implied private right of action." *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008) (quoting *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121 (9th Cir. 2000)) (alteration and internal quotation marks omitted). "Accordingly, the judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.* at 1231 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)) (alteration and internal quotation marks omitted).

Thus, it is not enough for North County to broadly proclaim that it is entitled to compensation under the Federal Communications Act. Instead, North County "must demonstrate that a federal *statute* vests [North County] with such a right." *Rouse v. United States Dep't of State*, 567 F.3d 408, 418 (9th Cir. 2009), *as amended* (citation omitted) (emphasis in the original). "Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* (quoting *Alexander*, 532 U.S. at 291) (parentheses and footnote reference omitted).

A broad assertion of a private right of action is not easily maintained under the Federal Communications Act, as our statutory analysis is intertwined with the requisite deference to the Commission's interpretation of the Federal Communications Act. This is so because "the FCC is the agency that is primarily responsible for the interpretation and implementation of the Telecommunications Act and of its own regulations." *Greene v. Sprint Commc'ns Co.*, 340 F.3d 1047, 1052 (9th Cir. 2003) (citation omitted); *see also Howard v. AOL*, 208 F.3d 741, 752 (9th Cir. 2000) ("Congress created the FCC to enforce the Communications Act. The Supreme Court's opinions have repeatedly emphasized that the FCC's judgment regarding how the public interest is best served is entitled to substantial judicial deference.") (quoting *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981)) (alteration

and internal quotation marks omitted). Absent a supporting Commission determination, and with no showing of Congressional intent to create a private right of action, North County cannot assert a viable claim for relief. *See Greene*, 340 F.3d at 1050-51.

In support of its contention that it has a private right of action to seek compensation from the CMRS providers in federal court, North County relies on 47 C.F.R. § 20.11(b); 47 U.S.C. § 251(b)(5); 47 U.S.C. § 201(b); 47 U.S.C. § 206; and 47 U.S.C. § 207. We examine each of these cited sources to determine if the referenced statutory or regulatory language provides for a private right of action or for a private remedy. We simultaneously consider any relevant determinations from the Commission. Applying this two-fold analysis and deferring to the Commission's primary jurisdiction, we conclude that 47 U.S.C. § 251(b) and 47 C.F.R. § 20.11(b) cannot support North County's claims for declaratory relief. "The primary jurisdiction doctrine is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *W. Radio Servs. Co. v. Qwest Corp.*, 530 F.3d 1186, 1200 (9th Cir. 2008) (citation and internal quotation marks omitted). "[T]he primary jurisdiction doctrine is designed to protect agencies possessing quasi-legislative powers and that are actively involved in the administration of regulatory statutes." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008) (citation and internal quotation marks omitted). "Charged with the administration of the Telecommunications and Federal Communications Acts, the FCC is such an agency." *Id.* (citation omitted). Under the primary jurisdiction doctrine, courts may decline to decide issues that are "within the special competence of an administrative agency." *Id.* at 1114. Specifically, the Commission's determinations that 47 U.S.C. § 251(b) is inapplicable to CMRS providers, and that the Commission is the appropriate forum for pursuing compensation under 47 C.F.R. § 20.11(b) are fatal to North County's contention. We also conclude that North County's declaratory

judgment claims premised on 47 U.S.C. § 201(b) are fatally flawed because the Commission has not determined that the CMRS providers' lack of compensation to CLECs violates § 201(b). Finally, we hold that, because North County cannot establish an independent right to compensation, 47 U.S.C. § 206 and § 207 are not viable vehicles for it to seek relief.

### 1.    47 C.F.R. § 20.11(b)

47 C.F.R. § 20.11(b) provides:

> Local exchange carriers and commercial mobile radio service providers shall comply with principles of mutual compensation. (1) A local exchange carrier shall pay reasonable compensation to a commercial mobile radio service provider in connection with terminating traffic that originates on facilities of the local exchange carrier. (2) A commercial mobile radio service provider shall pay reasonable compensation to a local exchange carrier in connection with terminating traffic that originates on the facilities of the commercial mobile radio service provider.

**[3]** Pursuant to 47 U.S.C. § 251(b)(5), "[e]ach local exchange carrier has the following duties: . . . The duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications."

**[4]** According to North County, a violation of 47 C.F.R. § 20.11(b)'s compensation requirements is the equivalent of a violation of 47 U.S.C. § 251(b)(5) for which it has a federal remedy. However, nothing in the plain language of § 251(b)(5) provides for a right to compensation. Rather, § 251(b)(5) provides for the duties of local exchange carriers, not even mentioning CMRS providers. *See* 47 U.S.C. § 251(b)(5).

**[5]** Our reading of § 251(b)(5)'s plain language is bolstered by the Commission's determination that § 251(b) is

inapplicable to CMRS providers. *In North County Commc'ns Corp. v. MetroPCS California, LLC*, 24 F.C.C.R. 3807 (2009), North County alleged that MetroPCS, a CMRS provider, failed to compensate North County for traffic terminated on North County's network. *See id.* at 3807-08, ¶¶ 1, 4. Rejecting North County's claims made pursuant to § 251, the Commission held:

> Section 251(b)(5) imposes a duty to establish reciprocal compensation only upon LECs. Moreover, the Commission has stated unequivocally that CMRS providers will not be classified as LECs and are not subject to the obligations of section 251(b). Therefore, as a CMRS provider, MetroPCS is not subject to the obligations arising directly from section 251(b) itself . . .

*MetroPCS*, 24 F.C.C.R. at 3814-15, ¶ 16 (footnote references and internal quotation marks omitted).

[6] The Commission also delineated the procedures that a private party must undertake in pursuit of reasonable compensation under 47 C.F.R. § 20.11(b). The Commission "decline[d] to determine, in the first instance, what constitutes reasonable compensation" under 47 C.F.R. § 20.11(b). *Id.* at 3810, ¶ 9 (footnote reference and internal quotation marks omitted). The Commission expounded that "the more appropriate venue for determining what constitutes reasonable compensation for North County's termination of intrastate traffic originated by MetroPCS is not this Commission, but rather the California PUC, via whatever procedural mechanism it deems appropriate under state law (*e.g.*, complaint proceeding, declaratory ruling proceeding, generic cost or rulemaking proceeding)." *Id.* (internal quotation marks omitted).[3,4] The

---

[3]The full FCC upheld the enforcement bureau's determination that "the California PUC is the more appropriate forum for determining the reasonable compensation rate for North County's termination of intrastate,

Commission explained that it would consider North County's claims once a determination of the rate of reasonable compensation was made by the appropriate state commission. *Id.* The Commission's ruling demonstrates that it is the proper forum for North County's claims premised on 47 C.F.R. § 20.11(b), once North County has met the predicate procedural requirements.[5]

[7] We readily defer to the Commission's resolution of North County's claims asserted pursuant to 47 U.S.C. § 251, and its determination of the procedures applicable to claims made under 47 C.F.R. § 20.11(b). *See Fones4All Corp. v. F.C.C.*, 550 F.3d 811, 820 (9th Cir. 2008) ("[W]e are interpreting the FCC's regulations, and courts should give substantial deference to an agency's interpretation of its own regulations.") (citation and internal quotation marks

intraMTA traffic originated by MetroPCS." *North County Commc'ns Corp. v. MetroPCS California, LLC*, No. EB-06-MD-007, FCC 09-100, 2009 WL 4005067, at *3, ¶ 12 (F.C.C. November 19, 2009). The full FCC also denied "the parties' Applications for Review regarding the forum issue primarily by affirming and incorporating by reference the reasoning and holdings of the *Bureau Merits Order*." *Id.* (footnote reference omitted).

[4]The Commission observed that its *T-Mobile Decision* was consistent with the conclusion that state commissions should initially determine the reasonable rate of compensation. *See MetroPCS*, 24 F.C.C.R. at 3812-13, ¶ 12; *see also North County Commc'ns Corp. v. MetroPCS California, LLC*, 2009 WL 4005067, at *4, ¶¶ 13-14.

[5]North County's assertion that the Commission equated a violation of 47 C.F.R. § 20.11 with a violation of the Federal Communications Act is unfounded. The Commission did not make such a determination. Rather, it "assume[d], *without deciding*, that a violation of rule 20.11 would be a violation of the Act cognizable under section 208 of the Act." *MetroPCS*, 24 F.C.C.R. at n.30 (citations omitted) (emphasis added). In any event, the Commission's determination demonstrates that the Commission, not the federal courts, should make this decision.

omitted).[6,7]

### 2. *47 U.S.C. § 201(b)*

Section 201(b) provides in relevant part:

> All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful[.]

**[8]** It is arguable that the plain language of § 201(b) contains an implication that private parties may pursue remedies for violations of the statute. However, given the broad language of the statute, a more reasonable interpretation is that it is within the Commission's purview to determine whether a particular practice constitutes a violation for which there is a private right to compensation. *See In re Long Distance Telecomm. Litig.*, 831 F.2d 627, 631 (6th Cir. 1987), *as amended*

---

[6]North County maintains that CMRS providers are subject to the same regulations as common carriers under 47 U.S.C. § 332(c)(1)(A) and 47 C.F.R. § 20.15(a). However, these broad statutory and regulatory provisions appear to be limited to CMRS providers' general obligations under the Federal Communications Act. *See* 47 C.F.R. § 20.15(a) ("Commercial mobile radio services providers, to the extent applicable, must comply with sections 201, 202, 206, 207, 208, 209, 216, 217, 223, 225, 226, 227, and 228 of the Communications Act"); *see also* 47 U.S.C. § 332(c)(1)(A) (deferring expressly to regulations promulgated by the Commission). The Commissions's recent decision regarding CMRS providers supports this conclusion. *See MetroPCS*, 24 F.C.C.R. at 3812, ¶ 11 (noting that § 332 does not apply to "intercarrier rates").

[7]North County's reliance on the *T-Mobile Decision* to establish a private right to compensation is also misplaced. In *T-Mobile*, the Commission considered a petition seeking "to reaffirm that wireless termination tariffs are not a proper mechanism for establishing reciprocal compensation arrangements for the transport and termination of traffic." 20 F.C.C.R. at 4855, ¶ 1 (footnote reference omitted). The Commission never addressed violations of 47 C.F.R. § 20.11, nor the remedies for such violations.

("This [charge of unreasonable practices] is a determination that Congress has placed squarely in the hands of the FCC.") (quoting *Consol. Rail Corp. v. Nat'l Ass'n of Recycling Indus., Inc.*, 449 U.S. 609, 612 (1981)) (alteration and internal quotation marks omitted); *see also Greene*, 340 F.3d at 1049-50. However, the Commission has not determined that the CMRS providers' lack of payment to CLECs like North County violates § 201(b).[8] North County essentially requests that the federal courts fill in the analytical gap stemming from the absence of a Commission determination regarding § 201(b). This we decline to do. The district court properly dismissed North County's declaratory judgment claim premised on § 201(b), because entry of a declaratory judgment "would . . . put interpretation of a finely-tuned regulatory scheme squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission." *Greene*, 340 F.3d at 1053 (quoting *Conboy v. AT&T Corp.*, 241 F.3d 242, 253 (2d Cir. 2001)) (alteration and internal quotation marks omitted); *see also In re Long Distance Telecommunications Litig.*, 831 F.2d at 631.[9]

---

[8]North County argues that the Commission concluded in MetroPCS that the CMRS providers' failure to pay reasonable compensation violated § 201(b). However, in *MetroPCS*, the Commission merely "[f]or purposes of [that] Order only, . . . assume[d], without deciding, that a CMRS carrier's failure to enter in good faith into an agreement with a CLEC regarding the termination of intrastate traffic, and a failure to pay a CLEC for such termination, could constitute a violation of section 201(b) of the Act." *MetroPCS*, 24 F.C.C.R. at n.72 (citation omitted). The Commission simply did not make the determination that North County seeks.

[9]North County fails to provide any supporting authority evidencing Congressional intent to create a private right to compensation pursuant to § 201(b). *See In re Digimarc Corp. Derivative Litig.*, 549 F.3d at 1230-31 ("In the absence of clear evidence of congressional intent, we may not usurp the legislative power by unilaterally creating a cause of action. *Touche Ross* [*& Co. v. Redington*], 442 U.S. [560,] 578 [1979]). The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.") *Id.* (parenthesis omitted).

Our conclusion, that an FCC determination is integral to claims involving § 201(b), is bolstered by the Supreme Court's recent decision in *Global Crossing Telecommuns., Inc. v. Metrophones Telecommuns., Inc.*, 550 U.S. 45 (2007). In *Global Crossing*, the Supreme Court considered whether § 207 of the Telecommunications Act authorized a payphone operator to bring a federal claim against carriers who refused to pay compensation ordered by the FCC. 550 U.S. at 47. The FCC determined "that a carrier's refusal to pay the compensation ordered amounts to an unreasonable practice within the terms of § 201(b)." *Id.* at 52 (citation and internal quotation marks omitted). "That determination, it believed, would permit a payphone operator to bring a federal-court lawsuit under § 207, to collect the compensation owed." *Id.* (citation omitted). The Supreme Court opined that § 207's language "makes clear that the lawsuit is proper *if* the Commission could properly hold that a carrier's failure to pay compensation is an unreasonable practice deemed unlawful under § 201(b)." *Id.* at 52-53 (internal quotation marks omitted) (emphasis in the original).

In reviewing § 207, the Supreme Court noted the linkage between the statute's purpose and the FCC's regulations. "[T]he purpose of § 207 is to allow persons injured by § 201(b) violations to bring federal-court damages actions." *Id.* at 53 (citations omitted). "History also makes clear that the FCC has long implemented § 201(b) through the issuance of rules and regulations. This is obviously so when the rules take the form of FCC approval or prescription for the future of rates that exclusively are reasonable." *Id.* (citations omitted). "It is also so when the FCC has set forth rules that, for example, require certain accounting methods or insist upon certain carrier practices, while (as here) prohibiting others as unjust or unreasonable under § 201(b)." *Id.* (citations omitted). "Insofar as the statute's language is concerned, to violate a regulation that lawfully implements § 201(b)'s requirements *is* to violate the statute." *Id.* at 54 (citation omitted) (emphasis in the original).

Given these statutory and regulatory considerations, the Supreme Court framed the issue as "whether the particular FCC regulation . . . lawfully implements § 201(b)'s unreasonable practice prohibition." *Id.* at 55. The Supreme Court opined that "[t]he carrier's refusal to divide the revenues it receives from the caller with its collaborator, the payphone operator, despite the FCC's regulation requiring it to do so, can reasonably be called a 'practice' 'in connection with' the provision of that service that is 'unreasonable.' " *Id.* (citation omitted).

However, the Supreme Court limited its holding, as it did "not suggest that the FCC is required to find carriers' failures to divide revenues to be § 201(b) violations in every instance." *Id.* at 56 (citation omitted). "Nor [did it] suggest that every violation of FCC regulations is an unjust and unreasonable practice. Here there is an explicit statutory scheme, and compensation of payphone operators is necessary to the proper implementation of that scheme. Under these circumstances, the FCC's finding that the failure to follow the order is an unreasonable practice is well within its authority." *Id.* "[T]he FCC properly implements § 201(b) when it reasonably finds that the failure to follow a Commission, *e.g.*, rate or rate-division determination made under a different statutory provision is unjust or unreasonable under § 201(b)." *Id.* at 60 (citations and emphasis omitted). "Moreover, in resting [its] conclusion upon the analogy with rate setting and rate divisions, the traditional, historical subject matter of § 201(b), [the Supreme Court] avoid[ed] authorizing the FCC to turn §§ 201(b) and 207 into a back-door remedy for violation of FCC regulations." *Id.*[10]

---

[10]North County cites *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 489 F.3d 1249 (D.C. Cir. 2007). However, in that case, the D.C. Circuit considered whether violations of § 201(b) provide a private right of action for payphone service providers. *See id.* at 1250. The D.C. Circuit held that, in accordance with *Global Crossing*, "a violation of the regulation at issue is a violation of § 201(b) of the Act, for which a private right of action is

**[9]** In contrast to the facts in *Global Crossing*, the Commission has not made any findings that CMRS providers' failure to compensate CLECs constitutes an unreasonable practice in violation of § 201(b). Because North County cannot demonstrate a violation of § 201(b) in the absence of an FCC determination, the district court properly dismissed North County's claims. *See Greene*, 340 F.3d at 1052-53.

Unable to demonstrate any statutory or regulatory violations for which there is a private right to compensation, North County fares no better in seeking declaratory judgment under 47 U.S.C. § 206 and § 207.

### 3.   *47 U.S.C. § 206 and § 207*

47 U.S.C. § 206 provides in pertinent part:

> In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter . . .

**[10]** 47 U.S.C. § 207 provides:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as herein-

authorized by § 207 of the Act, in effect creating a right of action to remedy a violation of the regulation itself." *Id.* (citation omitted). The D.C. Circuit's holding was based on the reasoning of *Global Crossing* and its reference to the predicate determination by the Commission of a regulatory violation, facts not present here.

> after provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

The plain language of §§ 206 and 207 establish procedures for private parties to pursue claims in federal court, but does not establish an independent private right of action for compensation. In Greene, we clarified that there must be an independent right to compensation for a private right of action to lie under §§ 206 and 207. *Greene*, 340 F.3d at 1050-51 ("Because the private right of action created by §§ 206 and 207 extends only to violations of this chapter, and § 276 does not require IXCs to compensate PSPs, there is no violation of § 276 for which a private action explicitly lies for payphone compensation.") (internal quotation marks omitted). Similarly, because North County has failed to establish a right to specific compensation pursuant to any statute or regulation, §§ 206 and 207 cannot form the basis for its compensation claims. *See id.*

**[11]** We have also held that claims pursuant to § 207, like those premised on § 201(b), are particularly amenable to resolution by the FCC. In *W. Radio Servs. Co.*, we considered whether the district court had subject matter jurisdiction over claims that an ILEC failed to negotiate an interconnection agreement in good faith. 530 F.3d at 1189. We observed that "issues regarding the applicability of § 207 are complex and should not be decided without the participation of the FCC, the agency principally responsible for the enforcement of the Telecommunications Act." *Id.* at 1204. "Whether § 207 provides a cause of action may, in fact, have an impact on FCC regulation in other contexts. For example, determining whether § 207 provides a private right of action . . . may involve interpreting the relationship between the terms common carrier, local exchange carrier, and telecommunications carrier. Section 207 refers to damages caused by a common

carrier." *Id.* (internal quotation marks omitted). "On the one hand, the statutory definitions and the use of the terms in other provisions of the Acts suggest that local exchange carriers are not necessarily a subset of common carriers." *Id.* (citations omitted). "On the other hand, the statutory definition of telecommunications carrier — a term which is used along with local exchange carrier in § 252 — as well as FCC guidance on the relationship between common carriers and telecommunications carriers, suggests that local exchange carriers may be common carriers for purposes of § 207." *Id.* (citations and internal quotation marks omitted). "As all three terms are frequently used throughout the telecommunications acts, interpreting them may have consequences in areas of telecommunications law other than the reach of § 207." *Id.* at 1205. We opined:

> In addition, interpretation of § 207 potentially implicates the jurisdiction of the F.C.C. Section 207 offers aggrieved individuals a choice of remedies for alleged violations of the Telecommunications Act: they may go to the F.C.C., presumably by bringing a complaint under § 208—which provides a mechanism for filing complaints before the F.C.C.—or to a district court. Given that the statute provides a choice between these two remedies, it may be logical to expect that if a claim can be brought in district court under § 207, it also may be brought to the F.C.C. under § 208. On the other hand, the F.C.C. has never directly decided whether it has jurisdiction over good faith claims . . .

*Id.* Because of this complexity, § 207 does not lend itself to declaratory relief.[11]

---

[11]North County also posits, without legal support, that the CMRS providers' payment to other LECs, and not North County, constitutes a discriminatory practice prohibited by 47 U.S.C. § 202(a). North County has waived this argument. *See Maldonado v. Morales*, 556 F.3d 1037, 1048 n.4 (9th Cir. 2009) ("Arguments made in passing and inadequately briefed are waived.") (citation omitted). In any event, the Commission has rejected North County's claims under § 202(a) against CMRS providers. *MetroPCS*, 24 F.C.C.R., at 3817, ¶ 22.

**[12]** We, therefore, conclude that the district court properly dismissed North County's declaratory judgment claims, as North County cannot demonstrate a right to compensation under any statute or regulation that is enforceable pursuant to a federal private right of action.[12]

## B.    North County's State Law Claims

**[13]** North County's second cause of action was for quantum meruit and its third cause of action sought compensation pursuant to a state tariff. Because the district court dismissed North County's federal claims for lack of subject matter jurisdiction, the district court lacked jurisdiction over North County's state claims. *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) ("If the District Court had original jurisdiction, but dismissed for non-jurisdictional reasons, then it could maintain supplemental jurisdiction at its discretion. If it dismissed the underlying claim on jurisdictional grounds, then it could not exercise supplemental jurisdiction.") (quoting *Saksenasingh v. Sec'y of Educ.*, 126 F.3d 347, 351 (D.C. Cir. 1997)).

## C.    The District Court's Dismissal Of North County's Claims With Prejudice[13]

**[14]** "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice

---

[12]North County also contends that the federal courts are the proper forum for resolving its claims because the Commission does not decide collection actions. However, the Commission has ruled that once North County seeks a rate of reasonable compensation from the relevant state commission, the Commission would be able to resolve North County's "collection" claims. *See MetroPCS*, 24 F.C.C.R. at 3810-11, ¶ 9.

[13]It does not appear that the district court relied on the primary jurisdiction doctrine in dismissing North County's declaratory judgment claims, nor did North County request a stay of the proceedings. However, we may apply the doctrine *sua sponte*. *See Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 n.2 (9th Cir. 2002), *as amended*.

pending the resolution of an issue within the special competence of an administrative agency." *Clark*, 523 F.3d at 1114. Given the Commission's consideration of North County's compensation claims in *MetroPCS* and the absence of a Commission determination regarding whether the CMRS providers' failure to compensate North County violates § 201(b), we conclude that "the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor*, 307 F.3d at 778. As a result, the dismissal of North County's claims should have been without prejudice to allow filing of the claim in the proper forum. *See Syntek Semiconductor*, 307 F.3d at 782; *see also Clark*, 523 F.3d at 1115.

## IV.   CONCLUSION

We hold that the district court did not abuse its discretion when it dismissed North County's declaratory judgment claims, because North County is unable to assert a federal claim. The district court lacked subject matter jurisdiction pursuant to the Declaratory Judgment Act, as North County cannot establish a private right to compensation under the provisions of the Federal Communications Act. The Commission has not determined that the CMRS providers' failure to pay compensation violates the Federal Communications Act. Because we are ill equipped to properly resolve North County's claim in the absence of a predicate determination from the Commission, we vacate the judgment and remand this case so that North County's claims can be dismissed without prejudice.

**VACATED and REMANDED for dismissal without prejudice.**