# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-2640

_____

Kaylan Stuart, individually and on behalf of all others similarly situated; Dustin Murilla; Walter Chruby; Rocky Hobbs,

*Plaintiffs - Appellants*,

v.

Global Tel*Link Corporation,

*Defendant - Appellee.*

_____

No. 18-2763

_____

Kaylan Stuart, individually and on behalf of all others similarly situated; Dustin Murilla; Walter Chruby; Rocky Hobbs,

*Plaintiffs - Appellees,*

v.

Global Tel*Link Corporation,

*Defendant - Appellant.*

_____

Appeals from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: October 15, 2019
Filed: April 15, 2020
_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Global Tel*Link provides telephone services to correctional facilities throughout the country. In 2014, appellant Stuart, an inmate who had used Global's services, brought a putative class action against Global. He claimed that the company's rates and fees were unjust and unreasonable under the Federal Communications Act (FCA), 47 U.S.C. § 201, *et seq.*, and that Global had unjustly enriched itself in violation of state laws. In 2015, Stuart amended his complaint to include three other plaintiffs, including appellants Murilla and Chruby. In 2017, the district court[1] certified a nationwide class for plaintiffs' FCA claims and four subclasses for the unjust enrichment claims. One year later, after the regulatory backdrop for the inmate calling service industry changed, the court decertified all classes and granted summary judgment for Global on all claims. In so doing, the court denied plaintiffs' request to stay federal court proceedings and to refer certain questions to the Federal Communications Commission.

Plaintiffs appeal the district court's decisions. Global conditionally cross-appeals an earlier judgment in which the court declined to compel arbitration between Global and one of the plaintiffs. We affirm the decisions on class decertification and summary judgment in favor of Global. We also affirm the district court's refusal to

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

stay proceedings because there was no need to refer questions to the FCC. Global's conditional cross-appeal is moot.

I.

This case arises in the context of a multiyear process of rulemaking by the FCC. In 2013, the agency issued an order and notice of proposed rulemaking related to calling services for inmates in correctional facilities. 28 FCC Rcd. 14107 (2013). Citing the complaints of "[t]ens of thousands" of individuals, the FCC stated that "the rates inmates and their friends and families pay for phone calls render it all but impossible for inmates to maintain contact with their loved ones and their broader support networks."

The FCC announced two rules relevant to our case. First, the FCC placed interim caps on the per-minute rates that carriers like Global could charge for telephone calls. In determining these rates, the FCC explained that "site commissions"—fees paid by service providers to facilities in exchange for an exclusive right to provide communication services—were "not reasonably related to the provision of [inmate calling services]" and "are not recoverable through [calling] rates." Second, the FCC required that ancillary charges "be based only on costs that are reasonably and directly related to the provision of [inmate calling services]." These ancillary charges included deposit fees, which are fees imposed by service providers when an individual uses a credit card to add money to an inmate's communication account.

Providers of inmate calling services immediately challenged many of the rules announced in the 2013 Order. 28 FCC Rcd. 15927 (2013). In January 2014, the D.C. Circuit stayed the rule related to ancillary charges. Order, *Securus Techs., Inc. v. FCC*, No. 13-1280 (D.C. Cir. Jan. 13, 2014), ECF No. 1474764. The interim rate caps went into effect.

In September 2014, appellant Stuart filed a putative class action complaint against Global, alleging violations of the FCA and "unjust enrichment." Stuart sought to represent a class of all persons in the United States who had used Global's inmate calling services. In his complaint, he drew heavily from the 2013 Order for facts about the inmate calling service industry and for the broader principle that Global's conduct violated the FCA.

In November 2015, the FCC issued a second order related to inmate calling services. 30 FCC Rcd. 12763 (2015). In this order, the FCC introduced new caps on call rates and a per-transaction limit on deposit fees. Reaffirming the FCC's position that site commissions were "not part of the cost of providing [inmate calling services]," the 2015 Order made clear that the FCC had not considered site commissions when setting call rates. Service providers challenged the new rules promulgated under the 2015 Order.

In 2016, plaintiff Hobbs intervened in this case after another plaintiff was dismissed, and the plaintiffs moved for class certification. The district court granted the motion, certifying a nationwide class for two claims under the FCA (one for calling rates and one for deposit fees) and four subclasses for the unjust enrichment claims grouped according to the governing state law. The case proceeded on a second amended complaint filed in December 2016.

Litigation related to the validity of the 2015 Order continued. In August 2017, the D.C. Circuit vacated the calling service rate caps. Among other concerns, the court concluded that the FCC's determination that site commissions were unrelated to the costs of providing services "defies reasoned decisionmaking." *Glob. Tel\*Link v. FCC*, 866 F.3d 397, 402, 413 (D.C. Cir. 2017). The D.C. Circuit also held that the FCC had authority to impose ancillary fee caps such as deposit fee caps on interstate calls, but not on intrastate calls. *Id.* at 415. The court therefore remanded the case

for the FCC to determine whether a methodology existed for segregating ancillary fees between interstate and intrastate calls. *Id.* at 402.

Following the D.C. Circuit decision, the plaintiffs here moved to stay proceedings in the district court and to refer two questions to the FCC. Global moved to decertify the class and for summary judgment on the individual claims. The district court denied plaintiffs' motion for a referral and granted Global's motions for class decertification and summary judgment.

## II.

We first address class decertification. Plaintiffs sought to certify classes under Federal Rule of Civil Procedure 23(b)(3). As such, they were required to establish not only the threshold prerequisites for all class actions under Rule 23(a)—numerosity, commonality, typicality, and adequate representation—but also that questions of law or fact common to all class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). We review the decertification decision for abuse of discretion. *Roby v. St. Louis Sw. Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985).

The district court decertified all classes based on a lack of predominance. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance requires that "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William B. Rubenstein, *Newberg on Class Actions* § 4:49, at 195-96 (5th ed. 2012)).

Plaintiffs' first claim is that Global's call rates were unjust and unreasonable under the FCA. When the district court certified this class, it did so with the understanding that the plaintiffs, under the 2013 and 2015 Orders, could prevail on a theory that site commissions were not recoverable at all through call rates. Two common questions united the class: whether Global set call rates with the purpose of recovering site commissions, and whether recovering site commissions through call rates was unjust and unreasonable as defined by the FCC.

This theory of class certification became untenable after the D.C. Circuit's decision in *Global Tel\*Link*. In that decision, the court determined that site commissions were a part of doing business in the inmate calling service industry, and that the FCC could not place a *per se* bar on recovering site commissions through call rates. 866 F.3d at 414. Therefore, what had been a question whose answer was shared among all class members in this case (whether Global's rates accounted for site commissions at all and were therefore unreasonable) became a question whose answer was likely to require considerable individual inquiry (whether Global's rates at a specific facility accounted for too great a proportion of site commissions and were therefore unreasonable). The district court acted within its discretion in deciding that common questions no longer predominated, and that a class action was not the proper vehicle for resolving this type of claim.

The second class action claim was that Global's deposit fees were unjust and unreasonable because they greatly exceeded the cost of processing deposits. The class as certified contained all individuals who had paid these deposit fees. In *Global Tel\*Link*, the D.C. Circuit confirmed that the FCC could place limits on deposit fees. 866 F.3d at 415. But the court also determined that the FCC could place those limits only on fees for interstate calls, not intrastate calls. *Id.* This determination introduced two new questions that the district court would need to resolve for each member of the nationwide class. Did a particular plaintiff make deposit fees for intrastate or interstate calls? And if the plaintiff made both types of deposits, what

proportion was dedicated to interstate calls?  As the district court noted, the plaintiffs presented no reliable mechanism for sorting deposit fees for interstate calls from fees for intrastate calls.  Given the two new questions and the fact that the plaintiffs put forward no convincing way to address one of them, we see no abuse of discretion in the court's determination that common questions no longer predominated.

Plaintiffs' third claim is that Global's revenue from call rates and deposit fees constitutes unjust enrichment under state law.  The district court decertified the class in light of Global's affirmative defense that a person cannot recover money that he or she has voluntarily paid.  *See Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 782 (8th Cir. 2010).  The court ruled that this affirmative defense, the "voluntary payment doctrine," would require substantial individualized inquiry and that common questions thus would not predominate.

Plaintiffs argue that the court should not have decertified the class on the basis of an affirmative defense.  Although courts are sometimes "reluctant" to refuse class certification because of affirmative defenses, a district court may do so when "the affirmative defenses are, for some reason, unusually important."  Rubenstein, *supra*, § 4:55.  The court here identified a convincing reason why the affirmative defense raised by Global would present a particularly troubling obstacle to class adjudication: it would require an individualized inquiry into the subjective thinking of each user of inmate calling services every time he or she made a call.

Plaintiffs also contend that they could defeat the voluntary payment doctrine without individualized inquiry by showing that Global's monopoly position in correctional facilities, standing alone, is sufficient to render any decision to use Global's services involuntary.  Even if this theory might hold sway in one jurisdiction, *see Ark. Nat. Gas Co. v. Norton, Co.*, 263 S.W. 775, 778 (Ark. 1924), plaintiffs have not demonstrated that it is universally accepted or that variations in

state law would not predominate over common issues. The district court did not abuse its discretion in decertifying the class.

## III.

The plaintiffs also appeal the dismissal of their individual claims. The district court granted summary judgment for Global on all three claims: that calling rates allegedly violated the FCA, that deposit fees allegedly violated the FCA, and that Global allegedly was unjustly enriched.

The district court ruled that the plaintiffs' claim alleging unjust and unreasonable calling rates and deposit rates could not proceed because there is no order or regulation of the FCC declaring Global's rates unreasonable. We agree that the claims lack the necessary predicate action by the agency.

The FCA states that any "unjust or unreasonable" charge in connection with a communication service "is declared to be unlawful," and gives the FCC power to promulgate rules and regulations defining "just" and "reasonable." 47 U.S.C. § 201(b). The Act provides that if a common carrier like Global engages in conduct deemed unlawful, the carrier "shall be liable to the person or persons injured thereby." *Id.* § 206. And the statute allows a person "claiming to be damaged" by an unlawful practice to "bring suit . . . in any district court of the United States." *Id.* § 207.

Therefore, a person may bring suit under § 207 if he alleges that a carrier has violated a rule or regulation promulgated by the FCC under § 201(b). *Glob. Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*, 550 U.S. 45, 54 (2007). But here, the plaintiffs cannot point to a violation of any FCC rule or regulation. In that situation, they may not proceed under § 207. *See Havens v. Mobex Network Servs.,*

*LLC*, 820 F.3d 80, 89-91 (3d Cir. 2016); *North Cty. Commc'ns Corp. v. Cal. Catalog & Tech.*, 594 F.3d 1149, 1158-61 (9th Cir. 2010).

Congress, when it enacted these provisions of the FCA, mimicked a regulatory regime that it had constructed nearly half a century earlier in the Interstate Commerce Act of 1887. *Global Crossing*, 550 U.S. at 49. One key part of that regime was a recalibration of authority between courts and an administrative agency: whereas "[t]he common law originally permitted a freight shipper to ask a *court* to determine whether a railroad rate was unreasonably high," the new regime "made clear that a commission, not a court, would determine a rate's reasonableness." *Id.* Allowing the plaintiffs to proceed with a claim alleging unreasonable rates without action by the FCC would place those decisions "squarely in the hands of private parties and some 700 federal district judges, instead of in the hands of the Commission." *New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 742 F.2d 1, 6 (1st Cir. 1984). We think that approach would be contrary to the congressional design.

Neither of plaintiffs' federal claims is premised on a regulation or order of the FCC. On the claims about calling rates, plaintiffs proceeded on the theory that Global violated the FCA if it recovered site commissions through call rates. The D.C. Circuit decision in *Global Tel\*Link* made this bright-line theory unsupportable as a matter of law. 866 F.3d at 412-14. On the deposit fee claims, plaintiff Hobbs asserted based on the 2013 and 2015 Orders that the fees violated the FCA if they were grossly disproportionate to the actual costs of processing deposits. But during the period in which Hobbs claims to have been harmed—March through July 2015, before the 2015 Order was released and after the 2013 Order was stayed—neither rule was in effect. Accordingly, plaintiffs can identify no violation of an FCC rule during the time in which they claim to have been injured.

The plaintiffs also dispute the district court's dismissal of their individual claims for unjust enrichment. The FCA, however, preempts a state law claim if the

claim would not exist without duties created by the Act. *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 678 (8th Cir. 2009) (interpreting 47 U.S.C. § 414). Throughout this litigation, the plaintiffs have argued that Global's proceeds were unjust because they were gathered through business practices that violated the FCA. That claim was preempted.

Plaintiffs argue that their unjust enrichment claims do not rely solely on duties imposed by the FCA but also "stem from a common law duty not to enrich oneself unjustly at the expense of others." Plaintiffs contend that Global's rates were "unjust" because Global used its "monopoly power" to "inflate" rates and "pass on the costs of site commissions." The four plaintiffs bring their claims under the laws of Arkansas, Minnesota, Pennsylvania, and Texas, respectively. In each of these jurisdictions, the general rule is that a common-law claim of unjust enrichment is not available where, as here, a valid contract governs the same matter. *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000); *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981); *Lowell Perkins Agency, Inc. v. Jacobs*, 469 S.W.2d 89, 92 (Ark. 1971). There are exceptions in some jurisdictions when a contract is void or rescinded, *Campbell v. Asbury Auto., Inc.*, 381 S.W.3d 21, 37 (Ark. 2011), or when there is an overpayment on a valid contract, *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469-70 (Tex. 1998), but plaintiffs identify no authority allowing a claim for unjust enrichment on the bare theory that a contractual price was unreasonably high due to one party's market power. Summary judgment was therefore proper.

IV.

After the D.C. Circuit decision in *Global Tel\*Link*, plaintiffs asked the district court to refer two questions to the FCC under the doctrine of primary jurisdiction. *See Reiter v. Cooper*, 507 U.S. 258, 268 (1993). First, for the calling rate claim,

-10-

"what criteria should the Court consider in determining which portions of [Global's] commission costs are directly related to providing inmate calling services?" Second, for the deposit fee claim, "[w]hat is the appropriate method for segregating interstate from instrastate ancillary fees so that the ancillary fees can be evaluated under the FCA?" The district court declined to refer these matters, and there was no error whether we review *de novo* or for abuse of discretion. *See Chlorine Inst., Inc.* v. *Soo Line R.R.*, 792 F.3d 903, 909 (8th Cir. 2015).

Whatever the FCC might have said in response to these questions would not alter the outcome here. On the calling rate claim, the plaintiffs' theory of the case— that recovering site commissions through call rates was *per se* unreasonable—was foreclosed by *Global Tel\*Link*. No elaboration from the FCC about how to determine reasonable call rates could have revived it. On the deposit fee claim, even if the FCC were able to propose a workable method to distinguish between fees paid for intrastate calls and interstate calls, the litigation still would require individualized fact-finding on whether a given plaintiff paid deposit fees for intrastate calls and, if so, in what proportion. The district court thus properly decertified the class action without seeking a determination by the agency on a methodology for segregating ancillary fees.

\*       \*       \*

For the foregoing reasons, the judgment of the district court is affirmed in No. 18-2640. The contingent cross-appeal in No. 18-2763 is dismissed as moot.

_____